**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PAUL LAWHEAD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 05 C 1871** |
| | ) | |
| **v.** | ) | **Magistrate Judge Morton Denlow** |
| | ) | |
| **CERIDIAN CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Paul Lawhead ("Plaintiff") claims that defendant Ceridian Corporation ("Ceridian") failed to hire him because of his age, fifty-five, and he has filed an age discrimination complaint. Ceridian claims that it did not hire Plaintiff because he lacked directly related sales experience and therefore he was not the most qualified applicant for the position. Ceridian has filed a motion for summary judgment that is now before the Court. For the reasons stated herein, the Court grants Ceridian's summary judgment motion.

## I. BACKGROUND FACTS

The following facts are undisputed or presented in the light most favorable to Plaintiff when contested.

## A. CERIDIAN MAJOR ACCOUNT REPRESENTATIVE JOB POSTING

The Ceridian Human Resources Group ("CHRG"), a division of Ceridian Corporation, sells human resources services such as a payroll and tax filing to its corporate customers. PR

¶ 4.[1]  In January 2001, Plaintiff responded to CHRG's job posting for a Major Account Representative (MAR) position at its Rosemont, Illinois office. *Id*. Ceridian's MARs, the highest level of CHRG sales employees servicing the Chicago area, meet with prospective customers' human resources directors or other senior management to sell Ceridian's payroll and human resources software products. *Id*. at ¶ 5.

> The job posting included a statement of minimum qualifications for the position:
>
> A Bachelor's Degree in business/finance/accounting or equivalent experience required, plus three to five years of directly related sales experience. Knowledge of Human Resources or Payroll required. Incumbent must possess effective oral and written communications skills, problem-solving skills, and be able to work independently in order to effectively negotiate sales. Familiarity with PCs and software required.

Pl. Ex. 4.

**B.     PLAINTIFF'S INTERVIEWS AT CERIDIAN**

CHRG manager Ryan Wormley, age thirty, received Plaintiff's application for the MAR position in early 2001. PR ¶ 9. Plaintiff's resumé indicated that he had previously worked for a different division of Ceridian and also had experience selling information technology (IT) tools. Pl. Ex. 7. Based on this experience, Wormley decided to interview Plaintiff for the position. Pl. Ex. 2.

---

[1] Citations to the record are in the following form: Defendant's 56.1(a) Statement of Material Facts is abbreviated "DS"; Plaintiff's response to DS is abbreviated "PR"; Plaintiff's 56.1(a) Statement of Additional Facts is abbreviated "PS"; Defendant's reply to PS is abbreviated "DR"; Plaintiff's and Defendant's Appendix of Exhibits are abbreviated as Pl./Def. Ex. __; Depositions are abbreviated as ____ Dep.

During Plaintiff's interview with Wormley in February 2001, Wormley explored Plaintiff's sales experience, which spanned more than twenty years. PR ¶¶ 10, 11. Wormley asked Plaintiff about his experience at Ceridian in 1996 and was disappointed to learn that, although Plaintiff had worked in sales, he had not sold the company's payroll or human resources products. *Id*. at 10.

Wormley also explored whether Plaintiff had any other experience selling payroll and human resources products. *Id*. at ¶ 9. Plaintiff indicated that he did not have any experience selling products strictly for the purposes of payroll or human resources. PR ¶ 12. Plaintiff did have experience selling a software package called MCBA, however, which included Enterprise Resource Planning (ERP), a human resources module. *Id*. at 13. Plaintiff's experience selling ERP was nearly twenty years ago. *Id*. Plaintiff sold fewer than a dozen MCBA packages and could not remember if the packages included ERP. *Id*. Plaintiff's resumé reflected additional experience in IT sales and marketing dating back to 1987. Pl. Ex. 7. Plaintiff possessed a Bachelor's Degree in Religion. Lawhead Dep. at 7.

Following the first interview, Plaintiff was invited to meet with Ceridian MAR Roger Morris, age fifty. PR ¶ 17. During this meeting, Plaintiff asked Morris if he would fit in well at Ceridian. DR ¶ 14. According to Plaintiff, Morris stated that Plaintiff and he were older than most MARs in Ceridian's Rosemont office, most of whom were in their thirties. *Id*. Following his meeting with Plaintiff, Morris reported to Wormley that Plaintiff lacked experience selling payroll or human resources products. PR ¶ 18. Morris also told Wormley that Plaintiff would make a "good addition to the team." DR ¶ 15.

## C.    CERIDIAN'S HIRING DECISION

Following Plaintiff's interview with Morris, Wormley made the decision to discontinue Plaintiff's interview process. PR ¶ 19. Ceridian eventually hired David Coyner, age thirty-three, for the MAR position in June 2001. *Id*. at ¶ 20. Coyner possessed an MBA and three years of experience selling E-Benefits programs, a human resources product, in two previous jobs. *Id*. By contrast, Plaintiff possessed a Bachelor's degree in Religion and had only limited experience selling human resources or payroll software years ago. Lawhead Dep. at 7; Pl. Ex. 7.

After Ceridian failed to hire him, Plaintiff submitted a discrimination claim to the Illinois Department of Human Rights (IDHR) alleging discrimination on the basis of age and religion. Def. Ex. 7. Ceridian's statement to the IDHR listed the reasons why it did not offer the MAR position to Plaintiff:

> Mr. Lawhead was not the most qualified candidate for the Major Account Representative Position. Mr. Lawhead did have sales experience selling IT tools which qualified him for an informational interview. He did not have previous sales experience selling Human Resource/Payroll/Benefits or Time and Attendance software calling on Chief Financial Officers or Vice Presidents of Human Resources. The position of Major Account Representative requires experience selling Human Resources/Payroll software or related software sales experience. [Other Ceridian MARs] were more qualified for the Major Account Representative than Mr. Lawhead.

DR ¶ 1; Pl. Ex. 2 at ¶ 3. In another statement to the IDHR, Ceridian stated that Plaintiff "was not the most qualified candidate for the position" because "he did not have previous software or technical sales experience calling on Chief Financial Officers or Vice Presidents of Human Resources." Pl. Ex. 3 at ¶ 4.

In his deposition, Wormley reiterated that Plaintiff did not have experience selling payroll and human resources software. Pl. Ex. 8 at 69. Wormley stated that Plaintiff had "plenty of experience" selling to high level executives and that a lack of such experience was not the basis for his decision not to hire Plaintiff. Wormley Dep. at 65. Rather, Plaintiff's lack of direct experience with human resources and payroll software was the basis for Wormley's decision not to hire Plaintiff. *Id*. at 75.

## D.    OTHER MARS AND APPLICANTS

In addition to Coyner, Wormley hired three other MARs in 2001: Gerald Brown, age thirty-three, in February 2001; Timothy Glenn, age thirty-seven, in June 2001; and Korey Wrobleski, age thirty-two, in August 2001. DR ¶ 11. Brown had experience selling software that dealt with outsourcing issues to chief financial officers. Pl. Ex. 2. Glenn had experience selling time and attendance software for Kronos, a Ceridian competitor. *Id*. Wrobleski had worked for Automatic Data Processing, also a Ceridian competitor, and had previously sold payroll and human resources products for Ceridian. *Id*. At least one other Ceridian MAR, Kevin Winter, age thirty-four, who was not hired at the same time Plaintiff applied for the position or at the same office that interviewed Plaintiff, did not have human resources or payroll sales experience when he was hired by Ceridian. DR ¶ 7.

Ceridian interviewed several other candidates for MAR positions in 2001. *Id.* at 8. These candidates fell both within and outside the ADEA protected class (older than age forty). Ceridian considered Eric Gleason, who was younger than Plaintiff, a "strong" candidate with a "strong track record selling IT related products." *Id.* at ¶ 7. Gleason

advanced to a final interview, even though, according to Wormley's interview notes, he did not have industry experience. *Id*., Pl. Ex. 10.

At least two other applicants in the protected class applied for the MAR position in 2001. DR ¶¶ 8, 9. Steve Albach, who was then forty-four, did not advance past his first interview with Wormley. *Id*. at ¶ 8. In his declaration, Albach stated he had four years of experience selling and servicing customers in the Chicago market in human resources and payroll software and business services. Pl. Ex. 12 at ¶ 3. Wormley stated in his deposition that while Albach had some related sales experience, it was not the type of experience sufficient to qualify him for the job. Wormley Dep. at 39. During Albach's interview with Wormley, Wormley asked if Albach had the "stamina" for the job, which required "a lot of hoofing it." Pl. Ex. 12 at ¶ 4.

Martin Fenton, who appeared from his resumé to be in his forties, also did not proceed past his first interview, despite a statement on Fenton's resumé that indicated he had sixteen years of sales experience, including sales of human resources and payroll applications. DR ¶ 9; Pl. Ex. 14. Wormley stated in his deposition that Fenton's actual human resources and payroll sales experience was "very light." Wormley Dep. at 42. Wormley also stated that he believed Fenton's experience was more as a consultant than as a sales representative. *Id*. at 43.

Of the nine people working under Wormley through 2001, only one, Morris, was older than forty years old. DR ¶ 10. The remaining eight employees ranged in age from thirty to thirty-seven. *Id*. Of the thirteen employees hired prior to 2001 by Ceridian, two

were older than forty. *Id*. at 12.

**E.  THE LITIGATION**

Plaintiff filed a complaint alleging that Ceridian's failure to hire him violated the Age

Discrimination in Employment Act ("ADEA").  Compl. at ¶ D.  The complaint included both

a disparate treatment theory and a disparate impact theory of age discrimination based on

Ceridian's failure to hire Plaintiff.  *Id.* at ¶ 1.  Ceridian has filed a motion for summary

judgment.  The parties engaged in oral argument on November 14, 2006.  At the oral

argument, Plaintiff stated that he was no longer proceeding on a disparate impact theory.

## II.  LEGAL STANDARDS

**A.  SUMMARY JUDGMENT STANDARD**

A court may grant summary judgment when the "pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law."  Fed.R.Civ.P. 56(c).  A genuine issue of material fact exists when "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).  The movant bears the burden of

establishing that there exists no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986); *Paul v. Theda Medical Center, Inc.*, 465 F.3d 790, 793 (7th Cir. 2006).

The party bearing the burden of proof on an issue at trial, however, may not rest on the

pleadings, but must "designate specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324.  The evidence is viewed in the light most favorable to the non-

movant and "all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

**B.     AGE DISCRIMINATION IN EMPLOYMENT ACT**

The ADEA prohibits an employer from failing to hire an employee on the basis of his age.  29 U.S.C. § 623(a)(1).  To succeed under a disparate treatment theory, an ADEA plaintiff must show that "the employee's protected trait actually played a role in [the decision-making] process and had a determinative influence on the outcome." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993).  The plaintiff may do so using either a direct or indirect method of proof.  *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060 (7th Cir. 2003).

Under the direct method, a plaintiff must "show by way of direct or circumstantial evidence, that his employer's decision to take an adverse job action against him was motivated by an impermissible purpose," such as age. *Cerutti*, 340 F.3d at 1061. "Direct evidence is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption.  In short, direct evidence essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Id.*

"A plaintiff can also prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence." *Id.*  That evidence can be (1) "suspicious timing, ambiguous statements . . . , behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory

intent might be drawn," (2) evidence "that employees similarly situated to the plaintiff . . . received systematically better treatment," and (3) "evidence that the plaintiff was qualified for the job in question but passed over in favor of . . . a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief, a mere pretext for discrimination." *Walker v. Board of Regents of the University of Wisconsin System*, 410 F.3d 387, 394 (7th Cir. 2005). The Seventh Circuit has noted that the third type of circumstantial evidence is "substantially the same evidence" as required under the indirect method. *Gorence v. Eagle Food Centers, Inc.*, 242 F.3d 759, 762 (7th Cir. 2001).

Under the indirect method adapted from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), courts use a burden-shifting approach. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). First, a failure-to-hire plaintiff must establish the following elements of the *prima facie* case: (1) he was a member of a the protected age group (forty or older); (2) he applied for and was qualified for the position; (3) he did not receive the position; and (4) those who were hired were not in the protected group and had similar or lesser qualifications for the position. *Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672, 675 (7th Cir. 2003). If the plaintiff fails to make out a *prima facie* case, courts generally need not address the remaining steps in the *McDonnell Douglas* framework. *See e.g. Velez v. City of Chicago*, 442 F.3d 1043, 1050 (7th Cir. 2006); *Contreras v. Suncast Corp.*, 237 F.3d 756, 761 (7th Cir. 2001); *but see Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 300

(7th Cir. 2004) ("merger of the legitimate expectations requirement with the pretext analysis is acceptable in limited circumstances," such as termination cases where an employee's failure to meet the employer's expectations is the employer's proffered reason for terminating the employee).

By satisfying the *prima facie* case, however, the plaintiff creates a rebuttable presumption of age discrimination and the burden shifts to the employer to come forward with a legitimate, non-discriminatory reason for failing to hire the plaintiff. *Id.* Finally, if the employer provides such a reason, the plaintiff must show that there is a question of fact as to whether the proffered reason was a pretext. *Gusewelle v. City of Wood River*, 374 F.3d 569, 575 (7th Cir. 2004). The Seventh Circuit has defined pretext as meaning that the employer's explanation is factually baseless, was not the real motivation for the decision, or was insufficient to motivate the decision. *Id.*

## III. DISCUSSION

## A.    DIRECT METHOD

Plaintiff has not put forth any direct evidence that Ceridian did not hire him because of his age, such as a direct statement revealing age discrimination. Plaintiff must, therefore, point to circumstantial evidence under the direct method, such as evidence of ambiguous statements, evidence that similarly situated employees were treated differently, or evidence that Ceridian's stated reason for failing to hire him is a mere pretext for discrimination. *Walker*, 410 F.3d at 394.

First, Plaintiff presents two sets of comments that could be construed as "ambiguous statements." Plaintiff asserts that in his second interview, Morris commented that most of Ceridian's MARs were younger than Morris and Plaintiff. DR ¶ 14. Further, Plaintiff presents evidence that during Wormley's interview of Albach, another MAR candidate in 2001, Wormley made allegedly age-related comments about the "stamina" and "hoofing it" required for the position. *Id.* at ¶ 13.

For ambiguous statements to constitute sufficient circumstantial evidence under the direct method, they must "give rise to a reasonable and straightforward inference that the employer has relied on a proscribed factor in taking action against the employee." *Luks v. Baxter Healthcare Corp.*, --- F.3d ---, 2006 WL 3113591 (7th Cir. 2006). Morris' and Wormley's statements here simply do not give rise to such an inference. Remarks may be evidence of intentional discrimination if they are "made by the decisionmaker, or those who influence the decisionmaker." *Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 272 (7th Cir. 2004). Morris' comments were not those of a decision-maker. Moreover, Morris ultimately gave a positive recommendation of Plaintiff to Wormley, who was the decision-maker. Finally, Wormley's comments to Albach are not so clearly age-based as to give rise to a "straightforward inference" that Wormley's decisions not to hire were based on age.

Second, Plaintiff has not put forth evidence that similarly situated candidates were treated differently. Indeed, Plaintiff contends that other candidates had either more experience (such as Albach, who had four years of payroll and human resources sales

experience, or Fenton, who stated he had sixteen years of payroll and human resources sales experience) or less experience (such as Gleason, who did not have any payroll or human resources experience) than Plaintiff. Thus, these candidates were not "similarly situated." *See e.g. Greer v. Bd. of Education of City of Chicago*, 267 F.3d 723, 728 (7th Cir. 2001) (stating that comparison employees must be similarly situated "in all material respects"); *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000) (requiring a showing that comparison employees possess analogous experience).

Finally, Plaintiff puts forth evidence that Ceridian's proffered reason for failing to hire him was merely pretextual. This inquiry is essentially the same as the pretext inquiry under the indirect method. *Gorence*, 242 F.3d at 762. "Circumstantial evidence, however, must point directly to a discriminatory reason for the employer's action." *Koszola v. Bd. of Education of City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004). Plaintiff can demonstrate pretext by creating a genuine issue of material fact as to whether the proffered reason is: (1) factually baseless, (2) not the real reason for failing to hire him, or (3) insufficient to motivate the decision not to hire. *Gusewelle*, 374 F.3d at 575. Plaintiff has not introduced evidence under the third category that would show that the proffered reason was insufficient to motivate the decision not to hire. Plaintiff has, however, pointed to circumstantial evidence under the first and second categories of proof.

First, Plaintiff argues that Ceridian's statement that it required MARs to possess direct sales experience with human resources or payroll products was factually baseless (that is, that

Ceridian did not actually consider such experience to be a key criterion in its hiring decisions). Plaintiff contends that Ceridian applied its purported key criterion–direct sales experience of human resources and payroll software–unevenly among MAR candidates. Specifically, Plaintiff contends that the criterion was applied more leniently to younger candidates and more stringently to older candidates.

Plaintiff argues that the MARs who Cerdidian hired did not have direct sales experience. The record does not support this argument. Brown had experience selling outsourcing software; Glenn had experience selling time and attendance software; and Wrobleski had experience selling payroll and human resources software. Pl. Ex. 2. Further, Winter, another MAR, was originally hired by Ceridian for a different position, to which the direct human resources or payroll software sales experience did not apply. DR ¶ 7.

Plaintiff also contends that the resumés of other, younger MAR candidates who advanced to final interviews or were hired did not indicate directly-related experience selling human resources or payroll software. Gleason, an MAR candidate younger than Plaintiff, lacked experience with human resources or payroll software. *Id.* While Gleason, unlike Plaintiff, advanced to a final interview with Ceridian, he was not ultimately hired. Wormley stated that he advanced Gleason to the final interview because of his strong track record in IT sales, which Wormley considered an asset because Gleason's experience "involved computers, company's networks, dealing with information technology and employees of our prospective firms." Pl. Ex. 8 at 36-37. Wormley ultimately decided not to hire Gleason.

Finally, Plaintiff argues that the resumés of other, older MAR candidates (such as Albach and Fenton) did indicate directly related sales experience, but these candidates did not advance beyond the first interview. Albach, according to his declaration, had four years of human resources and payroll sales experience. Pl. Ex. 12 at ¶ 3. Wormley felt, however, that Albach's experience did not have the "depth" sufficient to qualify him for the job. Wormley Dep. at 39. Fenton, according to his resumé, had sixteen years of consultative/solution based sales of various business software, including human resources and payroll applications. Pl. Ex. 14. Wormely felt Fenton's actual sales experience was light and that his experience was more as a consultant. Wormley Dep. at 42.

Based on this evidence, a reasonable jury could not conclude that Ceridian applied its key criterion inconsistently. Ceridian did not hire any MARs (for the position of MAR) who did not possess direct sales experience. The Seventh Circuit has held that "an employer's decision to favor one candidate over another can be mistaken, ill-considered or foolish, [but] so long as [the employer] honestly believed those reasons, pretext has not been shown." *Blise v. Antaramian*, 409 F.3d 861, 877 (7th Cir. 2005). Here, Wormley has provided reasons for his decision to advance Gleason to the final interview and for failing to offer Fenton and Albach a second interview. Plaintiff has not introduced evidence to suggest that Wormley's beliefs were not honestly held. Thus, a reasonable jury could not conclude that the purported inconsistencies in the advancement of candidates through the interview stages were great enough to prove that Ceridian's proffered reason for failing to hire Plaintiff was

factually baseless.

Plaintiff has also pointed to evidence that Ceridian's proffered reason was not the real reason for failing to hire him. Plaintiff argues that Ceridian's proffered reasons for its decision not to hire him have shifted. Plaintiff contends that in Ceridian's statements to the IDHR, Ceridian indicated that, in addition to lacking direct payroll or human resources software sales experience, Plaintiff also lacked experience calling on high-level executives. Ceridian's statement read: "[Plaintiff] did not have previous sales experience selling Human Resources/Payroll/Benefits or Time and Attendance software calling on Chief Financial Officers or Vice Presidents of Human Resources." Pl. Ex. 2. Plaintiff stresses that Wormley stated in his deposition that Plaintiff had plenty of experience calling on high level executives and that Plaintiff's lack of directly related sales experience was the reason for failing he was not hired. Wormley Dep. at 65. Thus, Plaintiff argues that Ceridian has shifted its reason for failing to hire him from his lack of experience calling on high level executives to his lack of directly related sales experience.

The Seventh Circuit has noted that "shifting and inconsistent explanations can provide a basis for a finding of pretext." *Schuster v. Lucent Technologies*, 327 F.3d 569, 577 (7th Cir. 2003). The explanations, however, "must actually be shifting and inconsistent to permit an inference of mendacity." *Id*. A shift in word choice, but not substance, is insufficient. *Id*. Here, the substance of Ceridian's proffered explanations was, at its core, the same: Plaintiff lacked directly related sales experience.

Thus, because Plaintiff has failed to present circumstantial evidence that would warrant a reasonable jury conclusion that Ceridian's proffered explanation was either factually baseless or not the real reason it did not hire Plaintiff, his pretext argument under the direct method fails. Plaintiff cannot survive summary judgment under the direct method.

## B.    INDIRECT METHOD

Thus, Plaintiff is limited to the indirect method to survive summary judgment.   The parties agree that Plaintiff satisfies the first element (he is older than forty so in the protected class) and the third element (he was not hired) of his *prima facie* case. Ceridian claims that Plaintiff has failed to satisfy the second element (he applied for and was qualified for the position) and fourth element (those who were hired were not in the protected group and had similar or lesser qualifications) of the *prima facie* case. Further, Ceridian claims that even if Plaintiff satisfied the *prima facie* case, it had legitimate, non-discriminatory reasons for failing to hire Plaintiff, which Plaintiff claims are merely pretextual.

### 1.    A Reasonable Jury Could Conclude that Plaintiff Satisfied the Second Element of the Prima Facie Case.

To establish the second element of the prima facie case under the indirect method, a plaintiff must prove that he was qualified for the position.  According to the CHRG job posting, the MAR position required a Bachelor's Degree in business, finance or accounting, or equivalent experience; three to five years of directly related sales experience; knowledge of human resources or payroll; and familiarity with PCs and software.  Additionally, the job

posting required effective communications and problem-solving skills and the ability to work independently.

Plaintiff had more than twenty years of IT and software sales experience, including sales experience at Ceridian. Thus, even though Plaintiff had a Bachelor's degree in Religion, a reasonable jury could conclude that he had experience equivalent to a business degree. A jury could also conclude that Plaintiff had developed effective interpersonal skills during his decades of sales experience. Further, Plaintiff's brief experience selling ERP, which included a human resources software module, provides a basis for a reasonable jury to conclude that Plaintiff had "knowledge of human resources or payroll experience." Finally, much of Plaintiff's sales experience dealt with software and IT tools and Plaintiff had previous experience at Ceridian. Based on these experiences, a reasonable jury could conclude that Plaintiff satisfied Ceridian's requirements for its MAR position.

### 2. Plaintiff Has Failed to Argue that He Satisfies the Fourth Element of His *Prima Facie* Case.

In its summary judgment motion, Ceridian argues that no genuine issue of material fact exists with regard to the fourth element of Plaintiff's *prima facie* case, which requires Plaintiff to show that those who were hired were not in the protected group and had similar or lesser qualifications for the position. After deciding not to hire Plaintiff, Ceridian instead hired David Coyner, who was outside the protected class. In his response to Ceridian's summary judgment motion, Plaintiff did not argue that Coyner was similarly or less qualified

for the position. Because Plaintiff would bear the burden of proof on this issue at trial, he may not rest on the pleadings; rather, he must designate specific facts showing that a genuine issue of material fact exists for trial. *Celotex*, 477 U.S. at 324.

Instead, Plaintiff admits that Coyner had three years of direct human resources and payroll sales experience. PR ¶ 20. By contrast, Plaintiff admitted that he only briefly sold a software package that included a human resources module years ago. *Id.* at 13. Plaintiff does not recall details of that experience and is unsure if any of his sales included the human resources module. *Id.* Thus, Plaintiff has failed to show that a genuine issue of material fact exists regarding the fourth element of his prima facie case. Because Plaintiff cannot establish a *prima facie* case of discrimination, the Court is not required to reach the issue of whether Ceridian's proffered reason for failing to hire Plaintiff is a pretext for discrimination.

### 3. Even if Plaintiff Established a *Prima Facie* Case, a Reasonable Jury Could Not Conclude that Defendant's Proffered Reason was a Pretext for Discrimination.

Ceridian's stated reason for not hiring Plaintiff is that Plaintiff lacked direct experience selling human resources and payroll software, which shifts the burden back to Plaintiff to establish that a fact issue remains regarding whether Ceridian's proffered reason was pretextual. This pretext analysis is the same as the analysis under Plaintiff's direct method claim of disparate treatment, *supra* at Section III(A). Plaintiff's pretext argument would fail here as well. Thus, even if Plaintiff had established his *prima facie* case of discrimination, he would not have survived summary judgment under the indirect method.

18

## C.    MIXED MOTIVES ARGUMENT

At oral argument, Plaintiff argued that he need not show that age discrimination was the sole reason underlying Ceridian's decision not to hire.  Plaintiff argued that he would be entitled to limited relief under the 1991 amendments to Title VII ( 42 U.S.C. § 2000e-2(m)), which recognized "mixed motives" discrimination claims.  Under *Desert Palace, Inc. v. Costa*, a Title VII plaintiff can introduce either direct or circumstantial evidence to show that a protected characteristic was a motivating factor in an adverse employment action. 539 U.S. 90, 98-99 (2003).

The Seventh Circuit has not extended *Desert Palace*, a case that dealt with a Title VII claim and interpreted a Title VII provision, to ADEA claims.  Many of our sister circuits similarly have not addressed the issue.  The cases that have addressed the issue have diverged.  *See Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 311 (5th Cir. 2004) (extending *Desert Palace* to ADEA); *EEOC v. Warfield-Rohr Casket Co., Inc.*, 364 F.3d 160, 164 (4th Cir. 2004) (*Desert Palace* does not apply to the ADEA); *Strauch v. American College of Surgeons*, 301 F. Supp. 2d 839, 844 (N.D. Ill. 2004) ("the similarities in text and purpose between Title VII and ADEA . . . [make] it likely that whatever doctrinal changes emerge as a result of *Desert Palace* in the Title VII context will be found equally applicable in the ADEA arena").

Plaintiff raised his mixed motive claim in a cursory footnote to his response to Ceridian's summary judgment motion.  Plaintiff's counsel briefly addressed the issue at oral

argument. For the same reasons the Court concludes that no fact question exists under the direct and indirect method, the Court also concludes that no fact question has been raised under the mixed motive argument, even if it were to apply.

### IV. CONCLUSION

Under Plaintiff's direct disparate treatment theory, a reasonable jury could not conclude that Ceridian's decision not to hire him was based on age. Under Plaintiff's indirect disparate treatment theory, Plaintiff has not created a fact issue for trial as to whether Coyner was similarly or less qualified for the position. Thus, Plaintiff cannot satisfy the fourth element of his *prima facie* case and his indirect disparate treatment claim cannot survive summary judgment. For these reasons, **Defendant's motion for summary judgment is granted.**

**SO ORDERED THIS 28 DAY OF NOVEMBER 2006.**

_____
**MORTON DENLOW**
**United States Magistrate Judge**

**Copies Have Been Mailed To:**

Stephen G. Seliger
155 N. Michigan Ave., Ste. 500
Chicago, IL 60601

Andrew Reisman
Enterprise Law Group, LLP
70 W. Madison St., Ste. 740
Chicago, IL 60602

Counsel for Plaintiff

Counsel for Defendant